[Civ. No. 804.    Third Appellate District.—May 10, 1911.]

# YUBA CONSOLIDATED GOLDFIELDS, a Corporation, Appellant, v. H. G. HILTON, Respondent.

EASEMENT — RIGHT OF WAY FOR HAULING DRIFTWOOD — PRESCRIPTIVE RIGHT—PRESUMPTION — BURDEN OF PROOF.—In an action to quiet title to a lot, where the court found plaintiff's ownership, but also found and adjudged it to be subject to a prescriptive easement or right of way for a wagon road in defendant, over which to carry driftwood from the north bank of the Yuba river, and it appears without conflict that the road had been used for that and other purposes for twenty years openly, continuously and without hindrance, it is presumed that such use of the easement was under a claim of right and adverse to the plaintiff and its grantors, and to their knowledge, and the burden of proof is upon the plaintiff to show the contrary, otherwise the presumption stands, and is sufficient to establish the prescriptive right of way.

ID.—PRESUMPTION OF KNOWLEDGE OF USE OF WAY—READY MEANS OF PROVING OTHERWISE.—The presumption that the owner of the servient estate had knowledge of the use of the way should be readily indulged, in the absence of proof to the contrary, in view of the ease with which it might be overcome by proof that such owner had no knowledge of its existence or use.

ID.—RIGHT TO TAKE DRIFTWOOD FROM PLAINTIFF'S LAND—SUBJECT OF GRANT OR PRESCRIPTION.—The rule is that the right of the defendant to take driftwood from the plaintiff's land may be subject either of a grant from plaintiff as owner or of a prescriptive right to take the same from the land of the owner.

ID.—IMMATERIAL EVIDENCE — NUMBER OF PEOPLE NEAR PLAINTIFF'S LAND.—The court properly sustained an objection to a question asked of a witness on cross-examination as to the number of people living within the radius of a mile of plaintiff's land. Such evidence was immaterial, and could not affect the elements required to constitute title by prescription nor change the presumption relative thereto.

ID.—RULING ON ORDER DENYING REHEARING IN BANK—OPINION AS TO DRIFTWOOD ON PLAINTIFF'S LAND DISAPPROVED — NO ESTOPPEL BY JUDGMENT.—The supreme court in bank, in denying a rehearing therein, disapproves of that part of the opinion of the district court of appeal concerning the right of the defendant to take driftwood from the land of the plaintiff. The judgment of the lower court merely establishes the right of the defendant to a way through plaintiff's land, for the purpose of hauling driftwood from the

Yuba river, and not from plaintiff's land. The right or title of defendant to the driftwood was not in issue, and if defendant takes driftwood to which plaintiff has a better right or title, the judgment will not be an estoppel against plaintiff or in favor of defendant.

APPEAL from a judgment of the Superior Court of Yuba County. K. S. Mahon, Judge presiding.

The facts are stated in the opinion of the court.

A. F. Jones, and W. H. Carlin, for Appellant.

J. E. Ebert, and M. T. Brittan, for Respondent.

BURNETT, J.—The action was brought to quiet title to a certain tract of land known as lot 2. The court found that plaintiff was the owner of the land but adjudged it to be subject to an easement in favor of defendant for a right of way, in width that of an ordinary farm wagon, for the purpose of hauling thereover driftwood from the north bank of the Yuba river. It was provided that said roadway was "to be used and enjoyed by means of and with a good and sufficient gate to be maintained on the line separating said lots one (1) and two (2), said gate to be kept closed except while passing through the same."

The main contention of appellant is that the evidence is insufficient to support the finding of adverse use of the roadway by defendant. Respondent has pointed out the principal part of the testimony as follows: The defendant Hilton testified that he owned lot one (1) for about fifteen years; that when he began living there lot 2 was owned by P. George; that there is a roadway leading from lot 1 down through lot 2 to the Yuba river; that he used the roadway for going down to the river for driftwood; that it is the only way he has of getting down to the river; that he has used the roadway for said purpose every year for said period of time; that there is a visible track or roadway and that it has been visible all the time; that there was no interruption of his use of the road until just before plaintiff brought the present action; that the wood which he took was driftwood which had lodged on plaintiff's land, lot No. 2, or on government land, and that

he had at times used the road for getting wood off of the upper end of his own land.

Mr. Gleason testified that he was thirty-three years of age and had known the land ever since he could remember, and during that time the road was used for the purpose of hauling driftwood.

Mr. Grass testified that he formerly owned lot 1; that he bought it in 1886 and owned it about eight years and sold it to defendant; that the road was there then and that he used it frequently every year to haul water and driftwood from the river.

The witness Ransom testified that he had known of the defendant's land for twenty-five years; that he at one time owned a one-half interest in it before Mr. Grass owned it; the road was in existence then and he used it every year to haul driftwood out of the river; that it was an open road and "you could go down there handy with a wagon and haul out a good load."

Mr. Striker testified that he knew of the existence of the road for twenty-two years; that the road was used by everyone living on defendant's land; that defendant used the road every year for hauling driftwood out of the river and that he also saw defendant haul water; that the road has been used by everyone living on lot No. 1.

In fact, there was no dispute as to the use of the road and no evidence offered by plaintiff in reference to it, counsel stating, in reply to a question asked by the court, that "it is not disputed that there was a single track road cut through the brush and used for hauling driftwood, and in regard to the existence of that road, as testified to by Mr. Grass, we are not going to put on any testimony."

It appears, therefore, without conflict, and it is virtually admitted by appellant, that the road was used openly, continuously and without hindrance or molestation for a period of at least twenty years. The only question that could arise would be whether the use was in hostility or in subordination to the title of appellant. As to this there is no direct evidence, but, under the circumstances shown, it is presumed that the use was under a claim of right and adverse and a *prima facie* title by prescription is thereby established. (Washburn on Easements, 4th ed., p. 156; 14 Cyc. 1147;

*Kripp* v. *Curtis,* 71 Cal. 66, [11 Pac. 879] ; *Franz* v. *Mendonca,* 131 Cal. 209, [63 Pac. 361] ; *Fleming* v. *Howard,* 150 Cal. 28, [87 Pac. 908].)

In the Fleming case, *supra,* is quoted with approval the following from Jones on Easements, section 186: "A presumption that the use was under a claim of right and adverse arises from an undisputed use of an easement for the established period of prescription and the burden is upon the party alleging that the use had been by virtue of a license or permission, to prove that fact by affirmative evidence. . . . Where an open and uninterrupted use of an easement for a sufficient length of time to create the presumption of a grant is shown, if the other party relies on the fact that these acts or any part of them were permissive, it is incumbent on such party, by sufficient proof, to rebut such presumption of a nonappearing grant; otherwise the presumption stands as sufficient proof and establishes the right."

These facts carry also, of course, the presumption that the owner of the servient estate had knowledge of the use of the roadway. It is asserted by appellant that "There isn't a particle of evidence in the record that P. George, who owned lot 2 for perhaps forty years up to about 1907, ever saw this road or knew it was there." It is true that no one testified that George saw the road, although witness, Striker, declared he had seen George on lot No. 2 several times; George was probably the only one who could testify positively as to whether he had seen the road and he was not put upon the stand. It may be said also that no one was residing on said lot No. 2 and the road was encompassed on both sides by willows, but it was clearly marked and in use for such a length of time that the inference is reasonable and urgent that George had knowledge of its use. The presumption should be indulged more readily in view of the ease with which appellant might have overcome the presumption if in fact the owner of lot No. 2 had no knowledge of the roadway.

It is claimed by appellant that respondent could not acquire a right to the driftwood that lodged on plaintiff's premises, and that there is no finding nor decree purporting to give him such a right. Therefore, it is contended that the judgment burdens plaintiff's land with an easement for a road and gate at the line fence for an utterly futile purpose.

As to the driftwood, it will probably not be disputed that when it lodges upon the land plaintiff has either a qualified or an absolute ownership in it. It must be true, as stated by appellant, that the true owner, if he could trace and identify it, would be entitled to remove it, but when on the land it is in possession of the owner of said land and this possessory title is good as against a trespasser or stranger to the title. It is admitted that the right to take this wood could be created by grant, but it is insisted that it is not subject to prescription.

The rule seems to be, however, as stated in 22 American and English Encyclopedia of Law, page 1186, that "In the absence of statutory provisions to the contrary, all easements which may be acquired by grant may also be acquired by prescription subject to the limitation that the right claimed must be reasonable." "An easement or servitude may be created by grant or prescription." (*American Co.* v. *Bradford,* 27 Cal. 367; *Wagner* v. *Hanna,* 38 Cal. 116, [99 Am. Dec. 354].)

There are certain exceptions and limitations to the foregoing doctrine, an instance of which is the easement as to light and air. The courts of the United States are practically unanimous that the English doctrine does not apply here, and that the right to light and air cannot be acquired by prescription or adverse user. (22 Am. & Eng. Ency. of Law, 1187.) Among the reasons assigned for this view are that this rule is not considered to be adapted to the existing condition of things in the United States and could not be applied to rapidly growing communities without working mischievous consequences to property owners, and also that in the nature of things there can be no adverse user of light or air, for the actual enjoyment of these elements by a property owner is upon his own land only, and involves no encroachment upon his neighbor's land, nor any interference with the latter's enjoyment of his own property to which he can object. The owner of the adjoining land, therefore, having submitted to no encroachment upon his own rights, cannot be presumed to have assented to such encroachment. (19 Am. & Eng. Ency. of Law, p. 119.) This subject, it may be remarked, is of pressing importance generally in cities only and therein it is controlled by police and sanitary regulations.

The cases cited by appellant belong to the foregoing class and they are not controlling here.

Among the various rights and easements that may be acquired by prescription which are enumerated in volume 22, page 1187 of the American and English Encyclopedia of Law, we do not find specifically the one in question here, but there are several not dissimilar to the one before us; for instance, the right to take ice from a pond, seaweed from a beach and the right to dig and carry away ore.

But we need not go beyond the terms of the statute, for the particular easement in controversy is expressly included in the specifications in section 801 of the Civil Code. It provides that ''The following land burdens, or servitudes upon land, may be attached to other land as incidents or appurtenances, and are then called easements: . . . 5. The right of taking water, wood, minerals and other things.'' We can see nothing unreasonable in the claim of respondent, and, since it is admitted that the right to take the wood could be acquired by grant and the general rule is that what may be acquired by grant may be acquired by prescription, and, furthermore, there is nothing to show that the instance before us furnishes an exception to the rule, and as the statute expressly enumerates this as one of the easements that may be attached to other land as an appurtenance, and the evidence being sufficient, we think the court did not err in finding that defendant was entitled to this right.

While the right to take the wood was not directly put in issue or found by the court, it seems to be clearly implied in the allegations of the answer and the findings of the court. The answer was probably demurrable for uncertainty in that respect, but the averment that defendant Hilton has had the actual possession for a period of more than fourteen years last past and ''has exclusively, openly, notoriously, peaceably, continuously, uninterruptedly, adversely to plaintiff and its predecessor in interest and with knowledge and acquiescence of plaintiff and its predecessors in interest and under a claim of right and title thereto used and traveled over said roadway for the purpose of going to said Yuba river on the lands of said plaintiff to gather driftwood from and on said Yuba river and to haul the same therefrom over said roadway to his own land as aforesaid,'' certainly car-

ries with it the implication that he did haul said driftwood under a claim of right for that length of time. The same observation may be made in reference to the corresponding finding which follows the foregoing allegation.

The judgment does not limit the right to haul driftwood from the land of plaintiff, the easement being "to that certain right of way . . . for the purpose of hauling thereover driftwood," but of this appellant cannot complain, as the evidence showed without objection that the road was used also to haul driftwood from government land and from the land of defendant.

There was no error in the court's ruling sustaining an objection to the question asked of plaintiff on cross-examination as to how many people were living within a radius of a mile of his home. This would not affect the question of the elements required to constitute title by prescription nor change the presumption created by open, continuous and unchallenged occupancy. As far as plaintiff's land is concerned, though, it does appear that it was unoccupied, but whether the community was thickly or sparsely settled seems immaterial.

We observe no prejudicial error and the judgment is affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 8, 1911, and the following opinion then rendered thereon:

THE COURT.—The petition for an order transferring this cause to the supreme court for rehearing is denied. We do not, however, approve that part of the opinion of the district court of appeal concerning the right of the defendant to take driftwood from the land of the plaintiff. The judgment of the lower court merely establishes the right of the defendant to a way through plaintiff's land, for the purpose of hauling thereover driftwood from the *Yuba river,* not from plaintiff's land. It declares nothing in regard to the right or title the defendant may have, or may obtain, to such driftwood in the

river. That right or title was not in issue, and it does not appear to be any concern of plaintiff, unless defendant takes driftwood to which plaintiff has a better right or title, in which case the judgment will not be an estoppel against plaintiff or in favor of defendant.