[Civ. No. 19676. Second Dist., Div. Three. Oct. 28, 1953.]

GEORGE S. DENBO, Respondent, v. K. SANDE SENNESS, Appellant.

864

O'Connor & O'Connor for Appellant.

Vaughan, Brandlin & Wehrle, J. J. Brandlin and Thomas G. Baggot for Respondent.

SHINN, P. J.—This is an action in which plaintiff was awarded a decree of specific performance of a contract for the purchase of land from defendant. The subject of the agreement was two acres in the town of Torrance and the purchase price $3,000. The agreement[1] consisted of a written option of defendant, accepted by plaintiff. Defendant appeals.

---

[1] "KNOW ALL MEN BY THESE PRESENTS:

"That for and in consideration of the sum of Ten Dollars ($10.00) to me in hand paid by GEORGE S. DENBO, I covenant and agree:

"That I, the undersigned K. SANDE SENNESS, of Los Angeles, hereby give and grant to GEORGE S. DENBO, of Los Angeles, California, his heirs and assigns (hereinafter called 'Optionee'), the exclusive right or privi-

Under the pleadings the issues for decision were the following: (1) Was the option agreement terminated by mutual consent; (2) was the two-acre parcel described with sufficient certainty; (3) was the consideration for the agreement sought to be enforced adequate, and was the agreement just and reasonable.

█ It was found that the option was not terminated. There was evidence that defendant attempted to cancel it and that plaintiff did not agree to its termination. The finding has support in the evidence. It is not questioned that plaintiff exercised the option, tendered the purchase price and that defendants refused to give a deed.

---

lege of purchasing the following-described property upon the terms hereinafter set forth:

"2 acres of that tip of Lot 1, Tr. 9765, City of Torrance, facing on Pacific Coast Highway and Newton St.

"The terms and conditions upon which the said Optionee may purchase the said property are as follows:

"(1) The said right or privilege is conditional upon consummation by me or my nominee of the purchase of said property on or before twenty (20) years from and after the date hereof. Unless such purchase is consummated within said time, the right and privilege hereby conferred shall thereupon expire.

"(2) The said right or privilege shall be exercised by delivery to me or my nominee of a written notice of election so to do within thirty (30) days following written notice given by me to the said Optionee of the fact that I have consummated the purchase of the said property. I hereby covenant to give or cause to be given immediately such notice if and when I or my nominee consummate the purchase of said property.

"(3) The purchase price to be paid by the holder of said right or privilege shall be Three Thousand Dollars ($3,000.00) payable in cash at the time of delivery to the Optionee of the grant deed provided for in paragraph (4) below.

"(4) Title to said property will be conveyed by me or my nominee by grant deed in the same condition in which I or my nominee may acquire it. I or my nominee will furnish policy of title insurance insuring title to said property in the said Optionee or such other grantee as he shall designate.

"(5) It is possible that I may elect to nominate some person other than myself to consummate the purchase of the above-described property. If so, the right and privilege hereby granted shall nevertheless inure to the said Optionee and I shall cause my nominee to fulfill the obligations hereof.

"(6) Any notice required or permitted hereunder shall be effective when directed to me at P. O. Box 1951 Hollywood 28, Calif., or to Optionee at 27111 Buckskin Lane, Rolling Hills, California, as the case may be, and deposited postage prepaid and registered in the United States mail. Either party may by notice given as aforesaid change his address for future notices hereunder.

"IN WITNESS WHEREOF, I have executed this agreement this 31st day of December, 1947.

"K. SANDE SENNESS"

As to the description of the two acres the court found that the parties intended, and their writing purported to describe, the two acres closest to the top of Lot 1, Tract 9765, in the city of Torrance, bounded on one side by the northeasterly boundary of Newton Street, on the second side by the southwesterly boundary of Pacific Coast Highway and on the third side by a straight line drawn between points on said boundary lines equidistant from the intersection of Newton Street and Pacific Coast Highway and located so as to enclose exactly two acres of land. No point is made of the fact that the agreement did not state the county and state in which the city of Torrance is located. Defendant says the description of the two acres was insufficient to identify a special parcel; that the tip of Lot 1 which faces on the two streets contains six acres, and the description given might relate to any two of the six acres. We cannot agree.

The general rule is that a deed will be sustained if it is possible from the whole description to ascertain and identify the land intended to be conveyed with reasonable certainty, either by the calls of the instrument as applied to the land or by the descriptive features of the grant. (9 Cal. Jur., p. 292; *Blume* v. *MacGregor*, 64 Cal.App.2d 244 [148 P.2d 656].) Subdivision maps must be placed of record in the office of the county recorder. (Bus. & Prof. Code, §§ 11500-11628.) The location and dimensions of Lot 1 were made certain by the number of the tract which was, in effect, a reference to a recorded map. Since it is not questioned that Torrance is a town in Los Angeles County, and the map would show the location of the mentioned streets, the land could be readily located on the ground. A tip is defined in the dictionaries as "the pointed end of anything; an end; also apex; summit; an end piece or part." Two acres of the tip of Lot 1, as described, would have to take in the point or apex of the triangle between the two streets. No other two acres would fit the description.

The complaint alleged that the agreed consideration for the option was the services of plaintiff in obtaining an agreement under which defendant would have the right to buy 406 acres of the Weston ranch from Weston Investment Company and that the services were fully performed. In the answer it was alleged that as consideration for the option plaintiff agreed that he would not only arrange for defendant to purchase the 406 acres but would also induce the seller to furnish financing for the development of the land, that he did not

get an agreement from the company to furnish financing for development and defendant was unable to acquire the land. It was found, on sufficient evidence, that plaintiff undertook to obtain an agreement of sale from the Weston Company but did not agree to induce the company to furnish any financing.

Such difficulty as we have on the appeal arises from the findings that the agreement was just and reasonable and the consideration adequate. Although defendant did not purchase 406 acres it is conceded that plaintiff was instrumental in negotiating an agreement with Weston under which defendant had a right to purchase 406 acres for $525,000. Defendant paid down $25,000, but did not complete the purchase and forfeited the $25,000. Later, in a separate transaction he purchased some 200 acres, subdivided and improved the land and made numerous resales.

The case was tried and is briefed here upon the theory that in order to prove adequacy of consideration it was necessary for plaintiff to prove that his services constituted a consideration for the option.

The two acres cost defendant $6,000; the option price was $3,000. It is apparent that if the consideration for the option was the rendition of services fully performed by plaintiff, it was an adequate consideration, and the option price was fair and reasonable. It is here the difficulty arises.

The court found that the consideration was adequate and the agreement just and reasonable. This was sufficient; but the findings as to consideration did not end here. The court made 26 separate findings. They are redundant, confused and contradictory. Many of them relate to evidentiary and immaterial matters. It was found: "It is not true that the defendant agreed to give the plaintiff the option to purchase the two-acre 'triangular tip' for $3,000 in exchange for plaintiff's services." Other findings were to the contrary. It was found that defendant orally agreed to give plaintiff the option if he would negotiate an agreement under which defendant would have the right to purchase the property for $525,000; that the option was given pursuant to this agreement; and also that from November 27, 1947 to February 2, 1948, plaintiff devoted substantially all of his time to negotiations for the purchase of the property by defendant. It was found that defendant purchased the two acres at a cost of $6,000 "and the services of plaintiff *and benefits* received by defendant exceeded the $3,000 difference between the option price pro-

vided in the option agreement and the defendant's cost of said land and that defendant has received an adequate consideration for the agreement and that it is just and reasonable." (Emphasis added.) There were other findings to the effect that "by reason of the efforts of plaintiff" defendant later acquired about 200 acres of the Weston ranch including the two-acre parcel, and that defendant constructed and sold thereon over 400 houses and made a profit of more than $200,000. There was also a finding to the effect that although the $10 stated consideration was not paid for the option defendant received other consideration contributed by plaintiff "in return for the described option agreement." It was thus found that plaintiff's services in obtaining the first agreement from Weston constituted the consideration for the option and also that they did not constitute the consideration. In such a situation it is our duty to reconcile the conflicting findings, if possible, and give to them a meaning which will be consistent with the judgment. (*Coyne* v. *Nelson,* 107 Cal. App.2d 469 [237 P.2d 45]; *Richter* v. *Walker,* 36 Cal.2d 634 [226 P.2d 593].)

Defendant says the finding there was adequate consideration for the option was based upon the findings that plaintiff negotiated the second agreement and that defendant profited largely through sales of lots in the subdivision.[2] He contends it was proved, without contradiction, that plaintiff had nothing to do with that transaction. In this he is supported by the record. Furthermore, any profits made or losses sustained by defendant in resales in the subdivision were not to be considered in determining the questions of adequacy of consideration and fairness, which were to be judged under the conditions which prevailed at the time the option was given. (*Drullinger* v. *Erskine,* 71 Cal.App.2d 492 [163 P.2d 48].)

If the findings of adequacy of consideration and the fairness of the agreement were based upon the unsupported finding that plaintiff negotiated the second agreement, or upon the finding as to defendant's profits on resales, they were in error. However, it cannot be said with any degree of certainty that the findings of adequacy of consideration and fairness were based upon the findings that plaintiff's services

---

[2]It is clear from the complaint and the brief of plaintiff's attorneys that they entertain the theory that the contract was just and reasonable because defendant made a profit in resales. The record does not show that the court shared that view of the law.

were responsible for the second agreement and that defendant made profits on resales. ■ The finding that the option was given pursuant to an oral agreement that it would be given in consideration of plaintiff's services in negotiating the first agreement is supported by the evidence and is consistent with the judgment. The finding that the option was not given in consideration for plaintiff's services was not only inconsistent with the other findings but also with the admissions of the answer and, in our opinion, was an inadvertence on the part of the trial court. While the inconsistency and contradictions are obvious, consideration of the findings as a whole, in the light of the record, inclines us to give effect to the finding that the true consideration, as understood by the parties, was plaintiff's services in negotiating the agreement for the purchase of the 406 acres. This finding justified the further findings that the consideration was adequate and the agreement just and reasonable.

The problem just discussed on the appeal arose from the fact that instead of three findings the court made 26, of which 23 were not only unnecessary but contradictory and confusing in many respects. ■ We have had occasion before to remark that the preparation of findings is a matter which calls for the careful selection of the issues upon which findings are required as support for the conclusions and judgment, that the findings should be confined to those issues, and that a multiplicity of findings upon evidentiary matters and matters wholly irrelevant to the ultimate issues frequently creates serious problems for a reviewing court and imperils the judgment. (*Swanson* v. *Wheeler,* 112 Cal.App.2d 43 [245 P.2d 699]; *Eggeman* v. *Binford,* 106 Cal.App.2d 556 [235 P.2d 409]; *Robbins* v. *Holther,* 98 Cal.App.2d 674 [220 P.2d 585]; *Crummer* v. *Besser Mfg. Co.,* 100 Cal.App.2d 189 [223 P.2d 100]; *Alles* v. *Hipp,* 108 Cal.App.2d 730 [239 P.2d 451]; *Sanal* v. *Meador,* 108 Cal.App.2d 820 [239 P.2d 908].) This is such a case.

Findings deserve greater attention than they receive. There seems to be a common misunderstanding that every allegation and denial of every pleading, however immaterial, and whether admitted or denied, necessitates a special finding. ■ It is elementary that findings should dispose of the ultimate, material issues and that all else is surplusage, but the practitioners who understand this are a small minority. The busy trial judge must depend on counsel to propose findings, and should be able to sign them with confidence that they are

in accord with his directions. But his confidence is frequently misplaced. On this appeal the court has had a problem thrust upon it for which there is no excuse.

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.